1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10   LISA M. SOLOMON,

11                  Plaintiff,                        CASE NO. 2:10-CV-01548-RBL-JRC

12        v.                                          REPORT AND
                                                      RECOMMENDATION ON
13   MICHAEL ASTRUE, Commissioner of                  PLAINTIFF'S COMPLAINT
     the Social Security Administration,
14                                                    Noting Date: September 16, 2011
                    Defendant.
15

16
           This matter has been referred to United States Magistrate Judge J. Richard Creatura
17
     pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as
18
     authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). Plaintiff
19
     has filed an Opening Brief and defendant has filed a Response Brief. (See ECF Nos. 13, 17).
20
           Based on the relevant record, the Court concludes that the ALJ failed to evaluate properly
21
     the lay testimony and plaintiff's testimony. In addition, the ALJ failed to evaluate properly the
22
     treating psychiatrist's medical opinion, which should be given controlling weight. The ALJ also
23
     erroneously failed to find that plaintiff's mental impairments met or medically equaled Listed
24

Impairments. Because plaintiff's mental impairments met or medically equaled two Listed

Impairments, the ALJ should have concluded that plaintiff was disabled. Therefore, the Court

recommends that this matter be reversed and remanded to the administration pursuant to

sentence four of 42 U.S.C. § 405(g) with instructions to remand to the ALJ for an award of

benefits.

BACKGROUND

Plaintiff LISA M. SOLOMON was born in 1977 and was twenty-six years old on her

alleged onset date of disability of February 20, 2004 (Tr. 118). Plaintiff had approximately four

years of experience working as a cleaner (Tr. 129). She cleaned homes and job sites for the

construction of new homes (id.).

On or about July 13, 2006, plaintiff suffered an extreme experience with shifts in her

mood (Tr. 254). Although she had been manic for about a week, she "crashed in Albertson's"

grocery store (id.). She reported that she was frozen with fear for about twenty minutes (id.). Her

brother-in-law and friend picked her up from the store and drove her to the hospital, from which

she was transported via ambulance to Centura Health for psychiatric admission (id.). Her self-

reported history revealed that she was diagnosed with bipolar disorder six years previously and

had been on Zoloft since then (id.). Her family history includes a grandmother with paranoid

schizophrenia and a father who may have been schizophrenic (id.). Plaintiff reported that her

aunt was institutionalized for "picking bugs off" of the walls (id.). Plaintiff reported similar

hallucinations, as well as hallucinations of dead family members talking to her (id.).

Plaintiff's medical reports include objective evidence of self-mutilation behavior (Tr. 266

("She has been scratching her left arm and legs with a knife . . . she has some superficial

scratches on her left arm and both legs"); see also Tr. 314, 367, 388). She reported that such

behavior occurs after she has nightmares about memories of severe physical and sexual abuse that began when she was five years old (Tr. 228, 367, 453, 475). She reported that "the 'Chucky Doll' tells her how to slit her wrist" (Tr. 254). When she was admitted to Centura Health, she reported that she had planned on using her husband's sword collection for suicide (Tr. 254).

On July 13, 2006, plaintiff was admitted to Porter Adventist Hospital on a mental health hold (Tr. 225). Dr. John F. Bridges, M.D. ("Dr. Bridges") opined that plaintiff's "chronic hallucinations with a remarkably positive family history for schizophrenia" supported his diagnosis of schizoaffective disorder (id.). Dr. Bridges also opined that plaintiff had "agoraphobia without panic attacks due to her tremendous paranoia and her fear and anxiety when she has to be out in public" (id.). Plaintiff was prescribed Risperdal, which she reported eradicated the voices, but only gave her partial relief from her paranoia (id.). Dr. Bridges assigned plaintiff a global assessment of functioning ("GAF") on admission of 40 (Tr. 226). Dr. Bridges assigned plaintiff a GAF on discharge of 70 on July 17, 2006 (Tr. 226). Plaintiff began treatment at Arapahoe/Douglas Mental Health on July 19, 2006 (Tr. 191).

<u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for Social Security Disability benefits on July 6, 2007, alleging disability onset of February 20, 2004 (Tr. 118-20). Plaintiff's application was denied (Tr. 59, 61-63). The hearing she requested on November 2, 2007 was held on January 14, 2010 before Administrative Law Judge Gary J. Suttles ("the ALJ") (Tr. 32-58, 64-70). Plaintiff and her husband both testified under oath at the hearing (Tr. 32-58).

On January 29, 2010, the ALJ issued a written decision (Tr. 15-27). Although the ALJ found that plaintiff suffered from the severe impairments of schizoaffective disorder, anxiety, post-traumatic stress disorder and polysubstance abuse in remission, he found that plaintiff had

the residual functional capacity to perform a full range of work at all exertional levels and that

she "retained the ability to get along with others, understand simple instructions, concentrate and

perform simple tasks, and respond and adapt to workplace changes and supervision in a limited

public/employee contact setting" (Tr. 20, 23). Therefore, the ALJ found that plaintiff was "not

under a disability, as defined in the Social Security Act, at any time from February 20, 2004, the

alleged onset date, through September 30, 2008, the date last insured" (Tr. 27). On July 30, 2010,

the Appeals Council denied plaintiff's request for review, making the written decision by the

ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security

Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also

Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the

"inability to engage in any substantial gainful activity" due to a physical or mental impairment

"which can be expected to result in death or which has lasted, or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that

plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and

work experience, engage in any other substantial gainful activity existing in the national

economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also  Tackett v. Apfel, 180 F.3d 1094,

1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (*citing* <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* <u>Davis v. Heckler</u>, 868 F.2d 323, 325-26 (9th Cir. 1989)); <u>see also</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" <u>See</u> <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* <u>Moore v. Comm'r of the Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." <u>Steele v. Barnhart</u>, 290 F.3d 936, 941(7th Cir. 2002) (*citing* <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 93-95 (1943) (other citations omitted)); <u>see also</u> <u>Stout v. Commissioner of Soc. Sec.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted); <u>Griemsmann v. Astrue</u>, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9, (W.D. Wash. 2009). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." <u>Stout v. Commissioner of Soc. Sec.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)).

<u>DISCUSSION</u>

1. <u>The ALJ failed to evaluate properly plaintiff's testimony and credibility.</u>

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)).  Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'"  Id. at 972 (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  Smolen, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms.

1  Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799

2  F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must

3  provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen,

4  80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

5  1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

6         The ALJ did not conclude that plaintiff was a malingerer.  The ALJ found that plaintiff's

7  "medically determinable impairments could reasonably be expected to cause the alleged

8  symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

9  effects of these symptoms are not credible to the extent that they are inconsistent with the above

10  residual functional capacity assessment" (Tr. 24). The ALJ gave multiple reasons for failing to

11  credit fully plaintiff's testimony. First, the ALJ discussed plaintiff's alleged activities of daily

12  living. Next, the ALJ discussed prescribed medications for plaintiff's impairments. Similarly, the

13  ALJ discussed plaintiff's compliance with her prescriptions for medications. Finally, in the

14  context of plaintiff's credibility, the ALJ discussed plaintiff's "no shows" and cancellations of

15  mental health therapy sessions. None of these reasons provides "clear and convincing" evidence

16  for rejecting plaintiff's testimony.

17         a.   Plaintiff's activities of daily living

18         Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the

19  mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not in any way

20  detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th

21  Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit

22  specified "the two grounds for using daily activities to form the basis of an adverse credibility

23  determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether

24

or not the activities of daily living meet "the threshold for transferable work skills." <u>Orn</u>, 495 F.3d at 639 (*citing* <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. <u>Orn</u>, 495 F.3d at 639 (*quoting* <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ noted that plaintiff handled her own personal care, watched television, managed money, performed household chores, read books, operated a computer, utilized email, paid bills online and visited with family members (Tr. 25). The ALJ did not make a specific finding that plaintiff's activities of daily living were transferable to a work setting or that they met "the threshold for transferable work skills." <u>See Orn</u>, 495 F.3d at 639. Therefore, in order to conclude that plaintiff's activities warranted an adverse credibility determination, the ALJ was required to find that they contradicted plaintiff's other testimony. <u>See id.</u> However, the ALJ simply concluded in general that plaintiff's activities of daily living were "mental and physical activities that reveal[ed] a significantly greater functional ability than alleged" (Tr. 25). The ALJ did not point out any specific allegations by plaintiff of functional limitations that were contradicted by plaintiff's activities of daily living. This was legal error. <u>See Orn</u>, 495 F.3d at 639. The Court concludes that plaintiff's activities of daily living do not provide any support for the ALJ's adverse credibility determination here.

b.  <u>Plaintiff's prescriptions for her mental impairments</u>

The ALJ noted that plaintiff was prescribed appropriate medications for her alleged impairments and found that this fact weighed "in her favor" (Tr. 25). However, the ALJ noted that the medications had a positive effect on her symptoms and that she "reported improvement

in her mental status" (id.). The fact that the medications proved at least somewhat effective suggests that the doctors' diagnoses were accurate. It does not provide evidence for an inference that plaintiff was not being entirely truthful when she alleged functional impairments based on her mental impairments. Therefore, contrary to the ALJ's implication, the Court concludes that these factors do not provide any support for the ALJ's decision not to credit fully plaintiff's testimony.

       c.  <u>Plaintiff's compliance with prescriptions for medication and therapy appointments</u>

      Although it is often the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because she wishes to remain disabled and receive benefits or because she is not suffering from that severe of an impairment if not doing everything possible to remedy it. <u>See</u> 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); <u>see also</u> SSR 96-7 1996 SSR LEXIS 4, at *21-*22; <u>but see Nichols v. Califano</u>, 556 F.2d 931, 932 (9th Cir. 1977) (even if a condition could be remedied by surgery, if the claimant's "actions were reasonable under the circumstances, then the district court's judgment upholding the [written decision by the ALJ] must be reversed").

      When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication or she may not even realize that her "condition reflects a potentially serious mental illness." <u>See Van Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment

in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from mental illness, especially severe impairments such as the severe schizoaffective disorder, anxiety and post-traumatic stress disorder suffered by plaintiff, (see Tr. 20), and the mentally ill person does not have the requisite insight into her condition, or does not have the memory and focus to have the ability to take a medication three times a day or make it to her mental health therapy appointments, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. Here, the ALJ noted that "the medical records indicate that the claimant forgot to take her medication on several occasions" (Tr. 25). The Court concludes that in this matter, the fact that plaintiff forgot to take her medication on several occasions does not indicate that plaintiff's "symptoms may not have been as limiting as the claimant has alleged," as implied by the ALJ (Tr. 20, 25). If anything, it indicated a greater severity of mental impairment. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. Plaintiff indicated in her function report that her husband reminds her everyday to take her medicine, otherwise she forgets (Tr. 136). The ALJ's referenced medical reports substantiate this allegation.

This analysis applies equally to plaintiff's "no shows" and cancellations in her mental health therapy appointments. In her function report, plaintiff indicated that she is scared of being around people, that she doesn't like to leave the house and that she keeps to herself, "in [her] house with the blinds closed" (Tr. 137, 140). In this matter, where plaintiff had alleged anxiety leaving the house and a fear of others and where plaintiff's severe impairments include such diagnosed mental impairments as post-traumatic stress disorder, anxiety and schizoaffective

disorder, the fact that she did not appear to have the requisite insight into her condition or the requisite memory or ability to make it to her mental health therapy appointments indicates, if anything, a greater severity of mental impairment. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124.

In addition, according to Social Security Ruling, ("SSR"), 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4, at *21-*22. Although the ALJ here found that plaintiff suffered from severe schizoaffective disorder, anxiety and post-traumatic stress disorder, the ALJ did not take into consideration plaintiff's particular mental impairments before inferring that the fact that she forgot to take her medication and did not attend some mental health therapy appointments raised "additional doubt as to the severity of the claimant's mental impairments" (Tr. 20, 25). This was error. See SSR 96-7 1996 SSR LEXIS 4, at *21-*22.

For the stated reasons and based on the relevant record, the Court concludes that the ALJ failed to provide clear and convincing reasons for his failure to credit fully plaintiff's testimony. See Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

2. The ALJ failed to evaluate properly the medical evidence.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (citing SSR 96-

2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902. The decision must "contain specific

reasons for the weight given to the treating source's medical opinion, supported by the evidence

in the case record." SSR 96-2p, 1996 SSR LEXIS 9. The ALJ must provide "clear and

convincing" reasons for rejecting the un-contradicted opinion of either a treating or examining

physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v.

Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043

(9th Cir. 1995)).

In general, more weight is given to a treating medical source's opinion than to the

opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v.

Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to

greater weight than the opinion of a non-examining physician." Lester, supra, 81 F.3d at 830

(citations omitted); see also 20 C.F.R. § 404.1527(d). "In order to discount the opinion of an

examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must

set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at

831).

Dr. Robert Bachus, M.D. ("Dr. Bachus"), a board-certified psychiatrist, treated plaintiff

from July 26, 2006 through January 22, 2008 (Tr. 200, 210, 222-223, 297, 306, 326). For

example, on or about July 26, 2006, Dr. Bachus examined plaintiff and performed a mental

status examination, although he did not conduct a detailed determination of plaintiff's specific

limitations (Tr. 222-23). Dr. Bachus opined that plaintiff's mood was "depressed," her affect was "concerned," and her thoughts were logical, although she endorsed "some paranoia, particularly at night, and she also endorse[d] continued command auditory hallucinations" (Tr. 223). He diagnosed plaintiff with schizoaffective disorder with a GAF of 40 (id.).

Dr. Bachus also treated plaintiff on August 10, 2006, as well as on other occasions (Tr. 207-08). He noted that plaintiff reported feeling worse since her last appointment and reported that she was not sleeping well, was isolating, was having crying spells, was suffering from anhedonia and was ruminating about the numerous losses in her life (Tr. 207). Dr. Bachus diagnosed plaintiff with major depressive episode, worsening, and "probably" post-traumatic stress disorder (id.). Dr. Bachus confirmed plaintiff's diagnoses of schizoaffective disorder and post-traumatic stress disorder on September 21, 2006 (Tr. 206).

On January 22, 2008, Dr. Bachus indicated in a letter that he was plaintiff's treating psychiatrist and had been meeting with her on a monthly basis for "the past 18 months" (Tr. 297). He indicated his assessment regarding plaintiff's diagnosis of post-traumatic stress disorder and indicated that plaintiff's symptoms at that time included "chronic depression, social anxiety, insomnia, nightmares, flashbacks and occasional dissociative episodes during which she often engages in self-mutilating behaviors" (id.). Dr. Bachus opined that plaintiff remained "totally disabled and unable to perform work of any kind" (id.). He opined that plaintiff's limitations would remain at the assessed level "for at least the next year, if not longer" (id.).

Based on a review of the relevant record, the Court concludes that the opinions of Dr. Bachus are consistent with substantial evidence in the record, including the opinions by Nurse Dewell, A.R.N.P., (Tr. 330 (opining on June 4, 2008 that plaintiff was "totally disabled"); see also Tr. 352, 353, 357, 358); Counselor Karahalios, M.A., L.M.H.C. (Tr. 334-36, 338, 339

1    (opining that plaintiff suffered the highest level of impairment in multiple areas of functioning,

2    that plaintiff was "unable to handle any stress" and that plaintiff likely would be absent from

3    work as a result of her impairments or treatment about two to three times a month)); see also Tr.

4    332-39); and, Practitioner Franklin, MHP (Tr. 511 (opining that plaintiff suffered the highest

5    level of impairment in her ability to complete a normal workweek without interruptions from

6    psychologically based symptoms and to perform at a consistent pace without an unreasonable

7    number and length of rest periods as well as in her ability to interact appropriately with the

8    general public); see also Tr. 507-14), as well as other substantial evidence in the record (see, e.g.,

9    Tr. 372-471).

10        The Court also notes but does not rely on the impairment questionnaire submitted to the

11   Appeals Council and completed by Dr. Mark Samson, M.D., ("Dr. Samson"), one of plaintiff's

12   treating psychiatrists on March 9, 2010 (see Tr. 517-24). Dr. Samson assigned plaintiff a GAF of

13   40 and assessed that plaintiff was markedly impaired (the highest level of impairment) regarding

14   the following abilities: to maintain attention and concentration for extended periods; to work in

15   coordination with or proximity to others without being distracted by them; to complete a normal

16   workweek without interruptions from psychologically based symptoms and to perform at a

17   consistent pace without an unreasonable number and length of rest periods; to interact

18   appropriately with the general public; to accept instructions and respond appropriately to

19   criticism from supervisors; to get along with co-workers or peers without distracting them or

20   exhibiting behavioral extremes; and, to travel to unfamiliar places or use public transportation

21   (id.). Dr. Samson noted that increased stress led to deterioration in plaintiff's ability to function

22   and noted that plaintiff suffered episodes of deterioration or decompensation (Tr. 522). Finally,

23

24

Dr. Samson noted that plaintiff likely would be absent from work as a result of her impairments or treatment more than three times a month (Tr. 524).

The ALJ afforded "little weight" to the opinions by Dr. Bachus, finding that his opinion about plaintiff's inability to work was "inconsistent with other clinical and objective findings of record" (Tr. 25). In support of this finding, the ALJ noted that plaintiff on one occasion reported a decrease in the frequency of her dissociative episodes (Tr. 26 (*citing* Tr. 300)) and that on another occasion showed some improvement in her post-traumatic stress disorder symptoms (Tr. 26 (*citing* Tr. 388)). The Court notes that although plaintiff reported a decrease in the frequency with which she suffered dissociative episodes, she nevertheless at that time had "experienced one dissociative episode since" her most recent episode which "lasted about 3 hrs, and though she did pick up a knife during that time, she was easily persuaded to give it to a friend" (Tr. 300). Although this treatment note does reflect some improvement in plaintiff's symptoms it also reflects that she still was experiencing severe impairments in her ability to function (id.). See also Brownawell v. Astrue, 554 F.3d 352, 356 (3d Cir. 2008) ("a doctor's observation that a patient is ''stable and well controlled with medication' during treatment does not necessarily support the medical conclusion that the patient can return to work'") (*citing* Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). Therefore, this treatment note is not inconsistent with Dr. Bachus' opinion that plaintiff was not able to work (Tr. 297).

Similarly, the other treatment note relied on by the ALJ for his finding that Dr. Bachus' opinion was inconsistent with other findings in the record includes an indication that plaintiff had "cut herself last week with the knife on her arm and does not remember what happened she just knows she cut herself" (Tr. 388). This treatment note also indicates that plaintiff, despite experiencing a more level mood, nevertheless reported "seeing 'dead people' in her bedroom at

night" (id.). This treatment note also includes the objective observations that plaintiff

demonstrated remarkable affect and mood, presenting teary-eyed and sad, and that plaintiff was

demonstrating some anxiety (Tr. 389). Again, although plaintiff suggested that she experienced

some improvement in her post-traumatic stress disorder symptoms, this treatment note

demonstrates that plaintiff still was experiencing functional impairments and does not

demonstrate that Dr. Bachus' opinion was inconsistent with other clinical findings. See

Brownawell, supra, 554 F.3d at 356.

The ALJ's finding that Dr. Bachus' opinion regarding plaintiff's inability to work was

inconsistent with other clinical and objective findings of record is not a finding supported by

substantial evidence in the record. Even if a treating or examining physician's opinion is

contradicted, that opinion "can only be rejected for specific and legitimate reasons that are

supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (citing

Andrews, 53 F.3d at 1043). The Court concludes that the ALJ failed to provide specific and

legitimate reasons supported by substantial evidence in the record to give "little weight" to Dr.

Bachus' opinion. See id.

Despite the fact that more weight generally is given to a treating medical source's opinion

than to the opinions of those who do not treat the claimant and despite the fact that an examining

physician's opinion is "entitled to greater weight than the opinion of a non-examining

physician," the ALJ here discredited Dr. Bachus' opinion, as well as the opinions of other

treating and examining medical sources consistent with Dr. Bachus' opinion, by giving

"substantial weight" to the opinion of a non-treating, non-examining medical consultant, Dr.

Mark Kilger (Tr. 25, 268-85). See Lester, supra, 81 F.3d at 830 (citations omitted); 20 C.F.R. §

404.1527(d); see also Westphal v. Eastman Kodac Co., No. 05-cv-6120, 2006 WL 1720380 at *5

(W.D.N.Y. 2006) ("a psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record . . . . Because of the inherent subjectivity of a psychiatric diagnosis, and because a proper diagnosis requires a personal evaluation of the patient's credibility and affect, it is the preferred practice that a psychiatric diagnosis be made based upon a personal interview with the patient"). This was legal error. Not only did the ALJ disregard the weight generally given to opinions by treating verses non-examining sources, but also, Dr. Mark Kilger's assessment was conducted in September, 2007, without the benefit of plaintiff's full medical record (see Tr. 284). See also Burgess v. Astrue, 537 F.3d 117, 132 (2d Cir. 2008). Although under certain circumstances, an ALJ can rely on a reviewing physician's assessment over a treating or examining physician's assessment, this can only be done if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Because the ALJ failed to do this, relying on a reviewing physician's assessment that contradicts the treating and examining physicians' assessment constitutes legal error.

For the aforesaid reasons and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly the medical evidence. The ALJ is not required to credit a doctor's opinion regarding the ultimate issue of disability. However, the opinion of Dr. Bachus on the nature and severity of plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." See 20 C.F.R. § 404.1527(d)(2). Therefore, according to the relevant federal regulation, Dr. Bachus' opinion should have been given "controlling weight." See id.; see also Edlund, supra, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14.

3. The ALJ failed to evaluate properly the lay evidence.

1     Pursuant to the relevant federal regulations, in addition to "acceptable medical sources,"

2     that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. §

3     404.1513 (a), there are "other sources," such as friends and family members, who are defined as

4     "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse

5     practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. §

6     404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir.

7     2010) (citing 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by

8     "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons

9     germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (citing Lewis v. Apfel,

10    236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen, 100 F.3d at 1467. This is because "[i]n

11    determining whether a claimant is disabled, an ALJ must consider lay witness testimony

12    concerning a claimant's ability to work."  Stout v. Commissioner, Social Security

13    Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing Dodrill v. Shalala, 12 F.3d 915, 919

14    (9th Cir. 1993)).

15        Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence,"

16    again concluding that in order for such evidence to be disregarded, "the ALJ must provide

17    'reasons that are germane to each witness.'"  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir.

18    2009) (quoting Van Nguyen, supra, 100 F.3d at 1467). The Court notes that testimony from

19    "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513

20    (d)(4), may not be disregarded simply because of their relationship to the claimant or because of

21    any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA,

22    574 F.3d 685, 694 (9th Cir. 2009).

23        a.  Lay testimony provided by plaintiff's husband

24

1       Here, the ALJ failed to address lay testimony provided under oath by plaintiff's husband,

2 Mr. Mark Solomon ("Mr. Solomon"). This was legal error. See Bruce v. Astrue, 557 F.3d at

3 1115. In addition, "where the ALJ's error lies in a failure to properly discuss competent lay

4 testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless

5 it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

6 have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing

7 cases).

8       Mr. Solomon testified that during plaintiff's dissociative episodes, plaintiff "shuts down

9 and then this Amy girl takes over" (Tr. 53). He testified that Amy "says that she comes out when

10 Lisa's body can't handle the stress" (id.). Mr. Solomon further testified that during a dissociative

11 episode, plaintiff will go "to the closet and hide in the closet" (id.). According to Mr. Solomon,

12 on one occasion, Amy "was coming out [and] our son walked in the house and she wanted to

13 know who he was. She asked questions about our animals, who they were and why there were

14 there" (Tr. 54). Because the Court cannot conclude with confidence that no reasonable ALJ,

15 when crediting fully the testimony provided by Mr. Solomon could have reached a different

16 disability determination, the Court cannot consider the ALJ's legal error in failing to consider

17 explicitly Mr. Solomon's testimony to be harmless error. See Stout, supra, 454 F.3d at 1056.

18       b.    Lay testimony provided by Advanced Registered Nurse Practitioner Diana L. Dewell,

19            A.R.N.P., Licensed Mental Health Counselor Nicole Karahalios, M.A., L.M.H.C. and

20            Mental Health Practitioner Shauna Franklin, M.H.P.

21

22       Advanced Registered Nurse Practitioner Diana Dewell, A.R.N.P. ("Nurse Dewell"),

23 Licensed Mental Health Counselor Nicole Karahalios, M.A., L.M.H.C. ("Counselor Karahalios")

24 and Mental Health Practitioner Shauna Franklin, M.H.P. ("Practitioner Franklin") all provided

lay opinions as "other sources," specifically, other medical sources, regarding plaintiff's impairments. See 20 C.F.R. § 404.1513 (d)(1). In order for an ALJ to disregard properly opinion evidence provided by such "other sources," characterized by the Ninth Circuit as lay testimony, the ALJ must give "reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis, supra, 236 F.3d at 511).

Here, it appears that the ALJ did not credit fully the opinions of these other medical sources, in part, due to the fact that they were not acceptable medical sources (Tr. 26). Although it is correct that evidence from such sources cannot be relied on solely to establish the existence of an impairment, see 20 C.F.R. § 404.1513 (a), this fact is not pertinent to each specific opinion and therefore, is not a reason germane to each individual. See Turner, supra, 613 F.3d at 1224; see also Lewis, supra, 236 F.3d at 511. Even if an opinion is offered by an "other source," it nevertheless is competent evidence and the ALJ still must consider it. See Stout, supra, 454 F.3d at 1053; Dodrill, supra, 12 F.3d at 919; Bruce, supra, 557 F.3d at 1115.

The ALJ did not credit the opinions by Nurse Dewell and Counselor Karahalios, in part, because he concluded that their opinions were inconsistent with the objective medical evidence of record (Tr. 26). In doing so, the ALJ noted an alleged "improvement" in plaintiff's mental status (id.). The Court already has concluded that although there was some evidence of limited improvement in plaintiff's symptoms, the medical record nevertheless demonstrates that she still was experiencing severe impairments in her ability to function, see supra, section 2.

The ALJ did not credit the opinions by Practitioner Franklin, in part, on the basis of "internal inconsistencies" (Tr. 26). He concluded that because Practitioner Franklin noted that plaintiff was stable and had a good prognosis with continued treatment, her opinion that plaintiff was incapable of performing even low stress jobs demonstrated an inconsistency (id.). This

Court does not agree. The Court is persuaded by the logic of the Third Circuit: "a doctor's observation that a patient is 'stable and well controlled with medication' during treatment does not necessarily support the medical conclusion that the patient can return to work.'" Brownawell, supra, 554 F.3d at 356. Simply because plaintiff was once stable and had a good prognosis if she continued her treatment is not necessarily inconsistent with the opinion that she was incapable of performing even low stress jobs. See id.

For the stated reasons and based on a review of the relevant record, the Court concludes that the ALJ failed to evaluate properly the lay opinion evidence provided by Nurse Dewell, Counselor Karahalios and Practitioner Franklin.

4. The ALJ erroneously failed to find that plaintiff's mental impairments met or medically equaled a Listed Impairment.

At step-three of the administrative process, if the administration finds that a claimant has an impairment that has lasted or can be expected to last for not less than 12 months, and is included in Appendix 1 of the Listings of Impairments, or is equal to a Listed Impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. § 404, Subpt. P, App. 1 ("the Listings"). Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). According to the relevant federal regulation, the administration will find that a claimant has a "listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B" of the listed impairment are satisfied. 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(A).

a. Listing 12.04, Affective Disorders

According to the specification in the relevant federal regulation, Listing 12.04, Affective Disorders, is

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied  . . . .
>
> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
>  1.  Depressive syndrome characterized by at least four of the following:
>   a.  Anhedonia or pervasive loss of interest in almost all activities; or
>   b.  Appetite disturbance with change in weight; or
>   c.  Sleep disturbance; or
>   d.  Psychomotor agitation or retardation; or
>   e.  Decreased energy; or
>   f.  Feelings of guilt or worthlessness; or
>   g.  Difficulty concentrating or thinking; or
>   h.  Thoughts of suicide; or
>   i.  Hallucinations, delusions, or paranoid thinking; or
>  2.  Manic syndrome  . . . .
>   or
>  3.  Bipolar syndrome  . . . .
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

Id. at Listing 12.04.

As plaintiff's diagnosed schizoaffective disorder satisfied the introductory paragraph and appeared to be characterized predominantly by depressive symptoms (see, e.g., Tr. 207, 222-23, 266, 267, 297, 319, 326, 327), in order for plaintiff's mental impairments in this matter to have met or medically equaled the Listing for Affective disorders, Listing 12.04, plaintiff must have

1   had medically documented persistence, either continuous *or intermittent* of four of the symptoms

2   listed in 12.04(A)(1) and two of the functional impairments listed in 12.04(B). See id. Substantial

3   evidence supports such a finding.

4        With respect to section 12.04(A)(1)(a), Dr. Bachus, whose opinion is controlling, on

5   August 10, 2006 noted that plaintiff was suffering from anhedonia or pervasive loss of interests

6   (Tr. 207). Nurse Marne Nelson, A.R.N.P. ("Nurse Nelson") on August 12, 2008 also reported

7   that plaintiff suffered from anhedonia (Tr. 473). According to Counselor Karahalios, plaintiff

8   suffered from anhedonia, as reported on September 4, 2008 (Tr. 333). Finally, Practitioner

9   Franklin indicated the clinical finding of anhedonia on November 12, 2009 (Tr. 508). For these

10  reasons and based on the relevant record, the Court finds that medically documented persistence

11  of a depressive syndrome characterized by anhedonia or pervasive loss of interests clearly is

12  demonstrated by substantial evidence in the record. However, the ALJ failed to make any

13  findings explicitly regarding any of the "A" criteria (see Tr. 22).

14       Regarding section 12.04(A)(1)(b), Counselor Karahalios reported on September 4, 2008

15  that plaintiff suffered from appetite disturbance with weight change (Tr. 333). Practitioner

16  Franklin indicated the same symptom on November 12, 2009 (Tr. 508). The Court finds that

17  medically documented persistence of a depressive syndrome characterized by appetite

18  disturbance with weight change is demonstrated in the record.

19       Regarding section 12.04(A)(1)(c), there are a large number of medically documented

20  records that plaintiff was suffering from sleep disturbance (see, e.g., Tr. 207, 222, 225, 306, 308,

21  319, 325, 333, 352, 365, 494, 500, 508). Therefore, the Court concludes that medically

22  documented persistence of a depressive syndrome characterized by sleep disturbance is

23  demonstrated by a very substantial amount of evidence in plaintiff's medical record.

24

Regarding section 12.04(A)(1)(e), Nurse Nelson on August 12, 2008 reported that plaintiff suffered from decreased energy (Tr. 473). Similarly, Counselor Karahalios reported on September 4, 2008 that plaintiff suffered from decreased energy (Tr. 333). Finally, Practitioner Franklin also indicated the clinical finding of decreased energy on November 12, 2009 (Tr. 508). For these reasons and based on the relevant record, the Court concludes that medically documented persistence of a depressive syndrome characterized by decreased energy is demonstrated by substantial evidence in the record.

Regarding section 12.04(A)(1)(f), Nurse Nelson on August 12, 2008 reported that plaintiff suffered from feelings of guilt "all the time" (Tr. 473). Similarly, Counselor Karahalios reported on September 4, 2008 that plaintiff suffered from feelings of guilt or worthlessness (Tr. 333). Finally, Practitioner Franklin on November 12, 2009 indicated that plaintiff suffered from feelings of guilt or worthlessness (Tr. 508). For these reasons and based on the relevant record, the Court concludes that medically documented persistence of a depressive syndrome characterized by feelings of guilt or worthlessness is demonstrated by substantial evidence in the record.

Regarding section 12.04(A)(1)(g), Counselor Karahalios reported on September 4, 2008 that plaintiff suffered from difficulty thinking or concentrating (Tr. 333). Clinical notes from February 27, 2008 also support the finding that plaintiff was suffering from difficulties in concentration (Tr. 500). Practitioner Franklin indicated on November 12, 2009 that plaintiff was suffering from difficulty thinking or concentrating (Tr. 508). For these reasons and based on the relevant record, the Court concludes that medically documented persistence of a depressive syndrome characterized by difficulty thinking or concentrating is demonstrated by substantial evidence in the record.

Regarding section 12.04(A)(1)(h), there is a very large amount of support in the record for the finding that plaintiff was suffering from thoughts of suicide (see, e.g., Tr. 202, 222-223, 266-67, 326, 333, 449, 473, 508-09, 518-19). Therefore, the Court concludes that medically documented persistence of a depressive syndrome characterized by thoughts of suicide is demonstrated by a very substantial amount of evidence in the record.

Regarding section 12.04(A)(1)(i), the record contains many references to plaintiff's hallucinations, delusions or paranoid thinking (see, e.g., Tr. 191, 222, 225, 254, 319, 333, 508). Therefore, the Court concludes that medically documented persistence of a depressive syndrome including hallucinations, delusions or paranoid thinking is demonstrated by a large amount of substantial evidence in the record.

Based on the relevant record, the Court concludes that regarding the Listing for Affective disorders, Listing 12.04, plaintiff has medically documented persistence, either continuous or intermittent, of at least four of the symptoms listed in 12.04(A)(1). Therefore, plaintiff's mental impairments met or equaled Listing 12.04 if her medical record demonstrated the existence of two of the functional impairments listed in 12.04(B).

On September 4, 2008, Counselor Karahalios opined that plaintiff experienced marked difficulties in maintaining social functioning (Tr. 336). She opined that plaintiff suffered from the highest level of impairment in every area of social functioning reported (id.). Counselor Karahalios opined specifically that plaintiff suffered from marked impairment in her ability to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (id.). The Court

1   notes that on November 12, 2009, Practitioner Franklin opined that plaintiff suffered from

2   marked limitations in her ability to interact appropriately with the general public (Tr. 511). The

3   Court also notes that plaintiff's reported behavior and symptoms noted throughout the record

4   also substantiate these opinions.

5       The ALJ noted that plaintiff "reported that she fears being around other people, and that

6   she does not like leaving the house," and also noted that plaintiff "indicated that she does not get

7   along well with authority figures" (Tr. 22). However, the ALJ concluded without explanation

8   that plaintiff suffered from only moderate difficulties in social functioning (id.). The ALJ did not

9   cite to any objective medical evidence that plaintiff's difficulties with social functioning were

10  less than her difficulties as opined by other sources. This was legal error as the ALJ must explain

11  why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157

12  F.3d at 725 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)); see also Benecke v.

13  Barnhart, 379 F.2d 587, 594 (9th Cir. 2004) ("Sheer disbelief is no substitute for substantial

14  evidence").

15      As discussed, similar to plaintiff's own reports as well as findings from other examining

16  and treating sources, Counselor Karahalios opined specifically that that plaintiff suffered from

17  the highest level of impairment in every area of social functioning reported (Tr. 336). Based on a

18  review of the relevant record and for the reasons discussed, the Court concludes that the medical

19  record demonstrates that plaintiff suffered from marked difficulties in maintaining social

20  functioning.

21      On September 4, 2008, Counselor Karahalios opined that plaintiff suffered from marked

22  impairment (the highest level of impairment) in her ability to maintain attention and

23  concentration for extended periods (Tr. 335). Although Dr. Samson's opinion was offered after

24

the expiration of plaintiff's disability insured status and was not available to the ALJ, the Court

notes that on March 9, 2010 Dr. Samson also opined that plaintiff suffered from marked

impairment in her ability to maintain attention and concentration for extended periods (Tr. 520).

These opinions are substantiated throughout plaintiff's medical record.

The ALJ noted that plaintiff "admitted that she has difficulty with completing tasks, with

concentration, and with following spoken instructions," and also noted that plaintiff indicated

"that she does not finish what she starts" (Tr. 22). However, the ALJ found that plaintiff suffered

only moderate difficulties with regard to concentration, persistence or pace (id.). The ALJ did

not explain this finding here and did not reference any opinion from any examining or treating

medical source that plaintiff's difficulties in this area were only moderate (id.). For the reasons

discussed and based on the relevant record, the Court concludes that the record demonstrates that

plaintiff suffered from marked difficulties in maintaining concentration, persistence or pace.

For the reasons stated above and based on the relevant record, the Court concludes that

plaintiff has met her burden to demonstrate that "the diagnostic description in the introductory

paragraph and the criteria of both paragraphs A and B" of Listing 12.04, Affective disorders,

were satisfied by the record of her mental impairments. 20 C.F.R. § 404, Subpt. P, App. 1,

12.00(A). Therefore, plaintiff's mental impairments met or medically equaled Listing 12.04, and

as a result, plaintiff should have been considered disabled without considering age, education

and work experience. See 20 C.F.R. § 404.1520(d); see also 20 C.F.R. § 404, Subpt. P, App. 1,

12.00(A), 12.04.

b. Listing 12.06, Anxiety Related Disorders

According to the specification in the federal regulation, regarding Listing 12.06, Anxiety

Related Disorders:

In these disorders anxiety is either the predominant disturbance or it is
experienced if the individual attempts to master symptoms . . . .

The required level of severity for these disorders is met when the requirements
in both A and B are satisfied . . . .

A.  Medically documented findings of at least one of the following:
. . . .
5. Recurrent and intrusive recollections of a traumatic experience, which are a
source of marked distress;

AND

B.  Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.06.

As discussed, the Court already has concluded that the medical record demonstrates that

plaintiff suffered from marked difficulties in maintaining social functioning and that plaintiff

suffered from marked difficulties in maintaining concentration, persistence or pace, see supra,

section 4(a). Therefore, plaintiff's mental impairments met or medically equaled Listing 12.06 if

the diagnostic description in the introductory paragraph is satisfied and if plaintiff had medically

documented findings of "recurrent and intrusive recollections of a traumatic experience, which

are a source of marked distress." See 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(A); 20 C.F.R. §

404, Subpt. P, App. 1, Listing 12.06.

The Court already has discussed plaintiff's history of severe physical and sexual abuse,

beginning at age 5, see supra, BACKGROUND (see also Tr. 228, 367, 453, 475). That plaintiff

experienced recurrent and intrusive recollections of her traumatic experiences and that these

recollections were a source of marked distress are demonstrated throughout plaintiff's medical

record.

1    Specifically, on September 4, 2008, Counselor Karahalios opined that plaintiff suffered

2    from intrusive recollections of a traumatic experience (Tr. 333). On November 12, 2009,

3    Practitioner Franklin opined that plaintiff suffered from intrusive recollections of a traumatic

4    experience (Tr. 508). Although Dr. Samson's opinion was offered after the expiration of

5    plaintiff's disability insured status and was not available to the ALJ, the Court notes that on

6    March 9, 2010 Dr. Samson also opined that plaintiff suffered from intrusive recollections of a

7    traumatic experience (Tr. 518). Based on a review of the relevant record, the Court concludes

8    that the medical record of plaintiff's mental impairments substantiates these opinions. The Court

9    also concludes that a large amount of evidence in plaintiff's medical record demonstrates that

10   plaintiff's recurrent and intrusive recollections of her childhood traumas were a source of marked

11   distress.

12        For the reasons stated above and based on the relevant record, the Court concludes that

13   plaintiff has met her burden to demonstrate that "the diagnostic description in the introductory

14   paragraph and the criteria of both paragraphs A and B" of Listing 12.06, Anxiety Related

15   Disorders, were satisfied by the medical record of plaintiff's mental impairments. 20 C.F.R. §

16   404, Subpt. P, App. 1, 12.00(A). Therefore, plaintiff's mental impairments met or medically

17   equaled Listing 12.06 and as a result, plaintiff should have been considered disabled without

18   considering age, education and work experience. See 20 C.F.R. § 404.1520(d); see also 20

19   C.F.R. § 404, Subpt. P, App. 1, 12.00(A), 12.06.

20      5.  This matter should be remanded for direction of an award of benefits.

21        The decision whether to remand a case for additional evidence or simply to award

22   benefits is within the discretion of the court.  Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir.

23   1989) (citing Varney v. Secretary of HHS, 859 F.2d 1396, 1399 (9th Cir. 1988)).  In Varney, the

24

Ninth Circuit held that if the record is fully developed, a remand for further proceedings is unnecessary. Varney, 859 F.2d at 1401; see also Reddick, 157 F.3d at 728-30 (case not remanded for further proceedings because it was clear from the record claimant was entitled to benefits); Swenson, 876 F.2d at 689 (directing an award of benefits because no useful purpose would be served by further proceedings); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)). For the reasons already stated and reiterated in the conclusion, the Court finds that this test is met here.

<u>CONCLUSION</u>

In this matter, the ALJ failed to provide legally sufficient reasons for rejecting the evidence from plaintiff's treating physician, Dr. Bachus. The ALJ also failed to provide clear and convincing reasons for not crediting fully plaintiff's testimony. In addition, the ALJ failed to provide legally sufficient reasons for rejecting the lay testimony provided by plaintiff's husband. Finally, the ALJ failed to provide legally sufficient reasons for rejecting the opinion evidence provided by Nurse Dewell, Counselor Karahalios and Practitioner Franklin.

It is clear from a review of the relevant record that the opinions provided by Dr. Bachus, Nurse Dewell and Counselor Karahalios all were consistent with the objective medical evidence of record and should have been credited. Dr. Bachus' opinion should have been given controlling

weight. Plaintiff's testimony, as well as that of her husband, also should have been credited. Importantly, it is clear from the record that the ALJ would be required to find plaintiff disabled were such evidence credited.

Therefore, in this matter, there are no outstanding issues that must be resolved before a determination of disability can be made. In addition, the Court has concluded specifically that the medical record demonstrates that plaintiff's mental impairments met or medically equaled two Listed Impairments, compelling a finding of disability under the relevant federal regulations.

For these reasons, the Court concludes that an immediate award of benefits should be directed. See Harman, 211 F.3d at 1178.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the administration with instructions to remand to the ALJ for an award of benefits. **JUDGMENT** should be for plaintiff and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 16**,** 2011, as noted in the caption.

Dated this 26th day of August, 2011.

J. Richard Creatura
United States Magistrate Judge